DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Opal Burns, appeals from the trial court's grant of summary judgment in favor of Appellees, Jefferson Pilot Financial Insurance Company ("Jefferson Insurance") and Jefferson Pilot Securities Corporation ("Jefferson Securities"). This Court affirms.
 I. {¶ 2} In early 1997, Michael Rudolph met with Appellant and her husband to discuss their financial future and to provide them investment advice. At these meetings, Appellant alleged that Rudolph presented himself as a Jefferson Pilot Insurance Agent and as a Registered Representative of Jefferson Securities Corporation. As a result of Rudolph's advice, the Burns bought three annuities. Following Mr. Burns' death, Rudolph returned to advise Appellant about her future finances.
 {¶ 3} As a result of these later meetings, Appellant invested in 19 customer owned coin operated telephone ("COCOT") programs and purchased a $200,000 life insurance policy. Shortly after investing for a final time in the COCOT programs, bringing her investment to a total of $129,500, Appellant's investment was lost. The phone program, in fact, operated as a Ponzi scheme, paying old investors with the money from new investors, but never generating income. Based upon the loss of her entire retirement fund, Appellant filed suit.
 {¶ 4} In her initial suit, Appellant filed claims against five defendants, including Appellees. In that complaint, Appellant alleged that the defendants had committed fraud, negligence, civil conspiracy, and had breached fiduciary duties. Appellant eventually dismissed her original complaint and refiled on November, 12, 2003. In her second complaint, Appellant named four defendants and raised claims of fraud, negligence, breach of fiduciary duty, violations of the Ohio Deceptive Sales Practices Act, violations of the Ohio Securities Act, and civil conspiracy. Appellees filed a joint answer to Appellant's complaint, denying the accusations.
 {¶ 5} On February 1, 2005, Appellees filed a joint motion for summary judgment. In their motion, Appellees asserted that Rudolph was an independent contractor and that they could not be held liable for his alleged tortious conduct. Appellant responded, asserting that Appellees exerted sufficient control over Rudolph for the trial court to find that he was an employee. The trial court disagreed and granted Appellees' motion for summary judgment, leaving several of Appellant's claims against other defendants pending in the trial court. In a later judgment entry, the trial court found that there was no just cause for delay with respect to the claims against Appellees. Following that entry, Appellant timely appealed, raising nine assignments of error for review. We first lay out the standard of review for each assignment of error and several assignments of error have been combined and rearranged for ease of analysis.
 II. {¶ 6} Each of Appellant's nine assignments of error is premised upon the trial court's erroneous grant of summary judgment in favor of Appellees. This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-oving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 9} In their joint motion for summary judgment, Appellees relied upon the depositions of Rudolph and W. Thomas Boulter, Rudolph's contracts with both Appellees, a products list, a compliance manual, Appellant's life insurance application, and numerous other documents that resulted from Appellant's participation in the COCOT program and her purchase of life insurance. Based upon the above, Appellees asserted that Rudolph was an independent contractor, not an employee of either Appellee. In addition, Appellees asserted that even if Rudolph were found to be an employee of either Appellee, he had acted outside the scope of his authority when advising Appellant to invest in the COCOT program.
 {¶ 10} Appellant responded to the motion for summary judgment, relying upon much of the same information as Appellees. In addition, Appellant utilized the depositions of other Jefferson Pilot employees, Rudolph's business card, and also used the paperwork generated when Appellant applied for life insurance. Ultimately, the trial court concluded that no genuine issue of material fact remained and granted judgment in favor of Appellees.
 ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED BY FAILING TO DISTINGUISH BETWEEN [APPELLEE] JEFFERSON PILOT FINANCIAL INSURANCE COMPANY AND [APPELLEE] JEFFERSON PILOT SECURITIES CORPORATION."
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO JEFFERSON PILOT FINANCIAL INSURANCE COMPANY AND NOT RESERVING FOR THE JURY THE ISSUE OF EMPLOYMENT STATUS OF MICHAEL J. RUDOLPH."
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED BY FINDING THAT DEFENDANT MICHAEL J. RUDOLPH WAS AN INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE, OF JEFFERSON PILOT SECURITIES CORPORATION."
 {¶ 11} In her first three assignments of error, Appellant contends that the trial court erred in finding that Rudolph was an independent contractor of both Appellees. We disagree.
 {¶ 12} Employee status is dependent on the particular facts of each case. Bobik v. Indus. Comm. (1946), 146 Ohio St. 187,191, citing Gillum v. Indus. Comm. (1943), 141 Ohio St. 373. Under Ohio law, "[t]he chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work." Bobik,146 Ohio St. 187, at paragraph one of the syllabus. "If such right is in the employer, the relationship is that of employer and employee[.]" Id. at paragraph two of the syllabus. Factors to be considered in making this determination include:
"[(1)] who controls the details and quality of the work; [(2)] who controls the hours worked; [(3)] who selects the materials, tools and personnel used; [(4)] who selects the routes [traveled]; [(5)] the length of employment; [(6)] the type of business; the method of payment; and [(7)] any pertinent agreements or contracts." Bostic v. Connor (1988),37 Ohio St.3d 144, 146.
Appellant asserts that utilizing these factors leads to a conclusion that Rudolph was an employee of both Appellees.
Jefferson Pilot Financial Insurance Company
 {¶ 13} In support of her claim that Rudolph was an employee of Jefferson Insurance, Appellant urges that Jefferson Insurance exerted sufficient control over the details of Rudolph's work to make him an employee. A review, however, of the Bostic factors compels a finding that Rudolph was an independent contractor.
 {¶ 14} First, Rudolph controlled the vast majority of the details of his work. While he was required to use a Jefferson Insurance business card and stationery, Jefferson Insurance did not control Rudolph's day-to-day work. Rudolph recruited his own clients and advised them regarding their investment futures as he deemed appropriate. Rudolph also explained during his deposition that he sold insurance for other companies in addition to Jefferson Insurance.
"Q. Are you essentially then an independent agent who sells several lines, multiple lines of insurance?
"A. That's correct.
"* * *
"Q. Were there other companies for which you could write policies while you were an agent for Jefferson Pilot?
"A. Yes.
"* * *
"A. It was not what they call a captive contract. I could license with whomever."
 {¶ 15} In addition, Rudolph set his own work hours and hired and paid for his own support staff. Rudolph also was paid by commission, rather than hourly, another indicator that he was an independent contractor. See Walker v. Lahoski (July 28, 1999), 9th Dist. No. 19293, at *2. Further, the insurance industry lends itself to an independent contractor market as agents often sell insurance for multiple companies. Finally, while not binding on this Court, the contract between the parties explicitly describes Rudolph's position as that of an independent contractor. Accordingly, the trial court did not err in finding that Rudolph was an independent contractor with respect to his employment relationship with Jefferson Insurance.
Jefferson Pilot Securities Corporation
 {¶ 16} Appellant urges that a stronger argument exists that Rudolph was an employee of Jefferson Securities. In support, Appellant relies heavily upon the detailed compliance manual issued to Rudolph by Jefferson Securities. We find that Appellant's argument lacks merit.
 {¶ 17} As a registered representative of Jefferson Securities, Rudolph had many of the same responsibilities he had as a representative of Jefferson Insurance. With Jefferson Securities, Rudolph set his own work hours and hired and paid for his own support staff and was paid by commission. In addition, the parties, by contract, deemed Rudolph an independent contractor. Accordingly, the Bostic factors again weigh in favor of a finding that Rudolph was an independent contractor. See Bostic, 37 Ohio St.3d at 146; Lahoski, supra, at *2.
 {¶ 18} While Appellant has urged that the compliance manual dictated how Rudolph's work was conducted, a review of the manual does not support such a conclusion. There is no dispute that the compliance manual listed the products Rudolph could sell and prohibited certain transactions. However, the list of products Rudolph could sell was nearly limitless. Jefferson Securities prohibited its representatives from selling penny stocks and unregistered securities. Nearly every other security, specifically those listed on national stock exchanges, could be sold. In addition, many of the restraints placed on Rudolph were not imposed by the manual, but rather by federal law. The manual itself simply reiterated those national standards to ensure that Rudolph was made aware of their existence. Appellees introduced undisputed evidence that the manual itself was required by the National Association of Securities Dealers to meet the requirement that representatives be supervised when selling securities. The manual, however, does not dictate to whom Rudolph could sell, placed nearly no limits on what he could sell, and placed no directives on how he could market those products (short of prohibiting him from engaging in fraud or other activity prohibited by federal securities laws). Given the wide breadth of independence that Rudolph had when selling securities, the trial court did not err in concluding that he was an independent contractor.
 {¶ 19} Based upon our finding that Rudolph was an independent contractor of both Appellees, Appellant can demonstrate no prejudice resulting from the alleged error in his first assignment of error. Accordingly, Appellant's first, second, and third assignments of error are overruled.
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT ERRED BY FINDING THAT JEFFERSON PILOT SECURITIES CORPORATION DID NOT ENGAGE IN FRAUD IN THE SALE OF SECURITIES TO [APPELLANT] AND NOT RESERVING THE QUESTION OF FACT FOR THE JURY."
 {¶ 20} In her fifth assignment of error, Appellant alleges that the trial court erred in granting summary judgment in favor of Jefferson Securities on her fraud claim. Appellant's fraud claim rests entirely upon Rudolph's actions. Based upon this Court's finding that Rudolph was not an employee of Jefferson Securities, Appellant's fifth assignment of error lacks merit.
 {¶ 21} Appellant further argues that Jefferson Securities is liable under an agency theory, asserting that Rudolph held himself out as an employee of Jefferson Securities and that his actions induced her to invest in the payphones. However, Appellant's counsel conceded during oral argument that Appellant was unclear who Rudolph represented when she purchased the phones from him. A review of Appellant's deposition supports the concession made by counsel. Appellant had seen his business card from Jefferson Securities at some time, but could not say when she has seen the card. As Appellant could not state whom she believed Rudolph represented when he sold her the phones, her claim for fraud must fail. See Linder v. American Natl. Ins.Co., 155 Ohio App.3d 30, 2003-Ohio-5394, at ¶ 26 (finding that if a claimant "never knew where her money was going, she could not have relied on" any alleged agency relationship). We note that Appellant's claim is also undermined by the paperwork related to her purchase which identifies ETS's marketing arm as the entity that Rudolph represented in the sale. Accordingly, Appellant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
"THE TRIAL COURT ERRED BY FINDING THAT JEFFERSON PILOT FINANCIAL INSURANCE COMPANY DID NOT ENGAGE IN FRAUD IN THE SALE OF THE INSURANCE POLICY SOLD TO [APPELLANT] AND NOT RESERVING THE QUESTION OF FACT FOR THE JURY."
 {¶ 22} In her sixth assignment of error, Appellant argues that the trial court erred in granting summary judgment in favor of Jefferson Insurance on her fraud claim. We disagree.
 {¶ 23} The elements of fraud are as follows:
"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Russ v. TRW, Inc.
(1991), 59 Ohio St.3d 42, 49.
In her assignment of error, Appellant has not asserted any of the alleged fraudulent acts that occurred, nor has she referenced any support from the record that demonstrates that those acts occurred. While Appellant has asserted that Rudolph committed fraud in the manner that he obtained life insurance on her behalf, she has not asserted how that fraud was accomplished. For example, the record contains two separate applications for insurance, each with different financial data, each purportedly signed by Appellant. However, there is no evidence in the record to support Appellant's assertions that Rudolph altered Appellant's financial data. Further, Appellant has offered no support for its conclusion that Rudolph forged Appellant's name on any documents. Rather, Rudolph candidly admitted that he had paid the initial $1,000 premium on the policy to prevent it from lapsing while Appellant was on vacation. Upon his return, Appellant agreed to pay and in fact paid the remaining $11,000 of the premium. Assuming that Rudolph was acting as Jefferson Insurance's agent when he sold Appellant a life insurance policy, Appellant has not demonstrated any false representation made by Rudolph in connection with the sale of the life insurance policy. Accordingly, Appellant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED BY FINDING THAT NEGLIGENT SUPERVISION WAS INAPPLICABLE BECAUSE DEFENDANT MICHAEL J. RUDOLPH WAS NOT AN EMPLOYEE OF EITHER OF THE JEFFERSON PILOT [APPELLEES]."
 {¶ 24} In her fourth assignment of error, Appellant asserts that the trial court erred in finding that neither Appellee had negligently supervised Rudolph. We disagree.
 {¶ 25} To successfully prove her claims that Appellees negligently supervised Rudolph, Appellant needed to show (1) the existence of an employment relationship, (2) that Rudolph was incompetent, (3) that Appellees had actual or constructive knowledge of his incompetence, (4) that Rudolph's act or omission caused her injuries, and (5) that Appellees' negligence in supervising Rudolph was the proximate cause of her injuries.Peterson v. Buckeye Steel Casings (1999), 133 Ohio App.3d 715,729; see also, Browning v. Ohio State Hwy. Patrol,151 Ohio App.3d 798, 2003-Ohio-1108, at ¶ 67.
 {¶ 26} While we presume that when Rudolph sold Appellant insurance he was acting as an agent of Jefferson Insurance, Appellant has not produced any evidence that Rudolph was incompetent in the manner in which he sold Appellant life insurance. Appellant urges that Jefferson Insurance should have been aware of Rudolph's alleged incompetence because two separate applications were submitted with different sets of financial data. Appellant, however, has offered no support for her position that Rudolph fraudulently altered the financial data. Appellant has further offered no support for her claim that she did not sign both applications and that Rudolph forged her name on the second application.
 {¶ 27} The fact that Rudolph paid the initial premium which bound Appellant to the policy is undisputed. Further, Rudolph's payment was made in violation of Jefferson Insurance's policies. However, Appellant has offered no authority and this Court has found no authority for the position that such a violation aids a claim of negligent supervision. Any claim by Appellant that Rudolph's activities led to her damages is undermined by the fact that she willingly paid the remainder of the $12,000 premium. It is beyond question that Appellant intended to fund the payment of her premium with the investment in the payphones. However, the mere fact that her investment failed does not make her initial purchase of life insurance somehow fraudulent.
 {¶ 28} In addition, this Court has determined that Rudolph was not an employee of Jefferson Securities during the period of time in which Appellant asserts that Rudolph was negligently supervised. Appellant therefore cannot establish the employment relationship necessary to support a claim of negligent supervision against Jefferson Securities. Accordingly, Appellant's claims against both Appellees must fail and her fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR VII
"THE TRIAL COURT ERRED BY CONCLUDING NO FIDUCIARY RELATIONSHIP EXISTED BETWEEN [APPELLANT] AND EITHER OF [APPELLEES]."
 {¶ 29} In her seventh assignment of error, Appellant argues that the trial court erred in concluding that no fiduciary relationship existed between Appellant and Appellees. This Court disagrees.
 {¶ 30} Courts have defined a fiduciary relationship as one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Federated Mgt. Co. v. Coopers Lybrand (2000),137 Ohio App.3d 366, 384, citing Ed Schory Sons, Inc. v. Soc.Natl. Bank (1996), 75 Ohio St.3d 433, 442. However, this Court need not decide whether a fiduciary duty was owed to Appellant by Jefferson Insurance because Appellant has not demonstrated any breach of that duty. As noted above, Appellant has supplied no evidence that Rudolph committed any act of fraud or concealed any material fact that resulted in her purchase of life insurance. While Appellant alleges that Rudolph committed fraud during the process, she may not rest upon the mere allegations in her complaint. Henkle, 75 Ohio App.3d at 735. Accordingly, assuming that Rudolph was an agent of Jefferson Insurance and that he owed Appellant a fiduciary duty, Appellant has produced no evidence that such a duty was breached.
 {¶ 31} With respect to Jefferson Securities, Appellant's claim must fail because Rudolph was never an employee of Jefferson Securities. Further, Appellant cannot claim that Rudolph's alleged fiduciary duty should be applied to Jefferson Securities. In her deposition, Appellant could never state whether she believed that Rudolph represented Jefferson Securities or the payphone company when he sold her the payphones. As such, she cannot succeed on a claim that Jefferson Securities owed her a fiduciary duty because she cannot demonstrate that it placed Rudolph in his position of trust. Accordingly, Appellant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII
"THE TRIAL COURT ERRED BY FINDING NEITHER [APPELLEE] WAS INVOLVED IN A CIVIL CONSPIRACY WHICH INJURED [APPELLANT]."
 {¶ 32} In her eighth assignment of error, Appellant asserts that the trial court erred in finding that neither Jefferson Pilot company had engaged in a civil conspiracy to injure her. We disagree.
 {¶ 33} In a claim for civil conspiracy, a claimant must prove "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself."Pappas v. United Parcel Service (Apr. 11, 2001), 9th Dist. No. 20226, at *5, citing Universal Coach, Inc. v. New York CityTransit Auth., Inc. (1993), 90 Ohio App.3d 284, 292; see, also,LeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 126 (defining civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."). Further, "[t]he malice involved must include an action done `purposely, without a reasonable or lawful excuse, to the injury of another.'" Pappas, supra, at *5, quoting Gosdenv. Louis (1996), 116 Ohio App.3d 195, 219.
 {¶ 34} In the instant matter, Appellant has produced no evidence of any malicious combination. Rather, all of the malicious acts alleged to have occurred were conducted by Rudolph. With regard to the sale of the insurance policy, no evidence was submitted that demonstrated that Jefferson Insurance was aware of any fraudulent activity that may have involved Rudolph. Further, with regard to the sale of the payphones, every deponent swore that neither Jefferson Pilot company was ever made aware of the sale of the payphones and that neither Jefferson Pilot company benefited in any manner from those sales. Accordingly, the trial court did not err in granting summary judgment against Appellant on her claim of civil conspiracy. Appellant's eighth assignment of error is overruled.
 ASSIGNMENT OF ERROR IX
"THE TRIAL COURT ERRED BY FINDING JEFFERSON PILOT SECURITIES CORPORATION DID NOT VIOLATE ORC 1707.42, 1707.43 OR 1707.44."
 {¶ 35} In her final assignment of error, Appellant contends that the trial court erred in its determination that Jefferson Securities had not violated Ohio securities laws. We disagree.
 {¶ 36} In her final assignment of error, Appellant reiterates that Jefferson Securities should be held accountable for Rudolph's actions. Appellant, however, cites no law or authority in support of her claims. See App.R. 16(A)(7). Further, Appellant has made no argument regarding how any of the above statutes apply in the instant matter. Accordingly, "[i]f an argument exists that can support [Appellant's contentions], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 18673, at *8. Appellant's ninth assignment of error is overruled.
 III. {¶ 37} Appellant's nine assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Baird, J., concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)