[Cite as *Thomas v. Reserves Network*, 2011-Ohio-5857.]

STATE OF OHIO        )               IN THE COURT OF APPEALS
                        )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

MONTY THOMAS

      Appellant

      v.

THE RESERVES NETWORK, et al.

      Appellees

C.A. No.     10CA009886

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CV163906

DECISION AND JOURNAL ENTRY

Dated: November 14, 2011

WHITMORE, Judge.

{¶1}   Plaintiff-Appellant, Monty Thomas, appeals from the judgment of the Lorain County Court of Common Pleas, denying his motion for leave to amend his complaint and granting summary judgment in favor of Defendant-Appellees, The Reserves Network, Inc. ("Reserves Network") and Victor McCown. This Court affirms.

I

{¶2}   Reserves Network and I-Force, LLC ("I-Force") are two temporary staffing agencies that both provided Central Ohio Warehouse Co. ("Central Ohio") with workers for its warehouse. Specifically, Reserves Network provided Central Ohio with Victor McCown, and I-Force provided Central Ohio with Monty Thomas. On October 4, 2007, Thomas was seriously injured after McCown operated a tow motor and caused a steel rack loaded with tires to fall upon Thomas. Thomas received workers' compensation benefits as a result of his injuries.

**{¶3}** On September 11, 2009, Thomas filed suit against McCown[1] and all of the agencies involved in this matter. As to McCown, Reserves Network, and Central Ohio, Thomas stated a claim for negligence. As to Central Ohio and I-Force, Thomas stated claims for two intentional torts, failure to comply with various statutory regulations, and punitive damages. Reserves Network and McCown filed a motion for summary judgment together while both I-Force and Central Ohio independently moved for summary judgment. Thomas filed a single memorandum in opposition, responding to all of the foregoing motions.

**{¶4}** On July 9, 2010, after all the summary judgment motions were filed, Thomas requested leave to file a second amended complaint. Specifically, Thomas sought to add an additional count for negligent hiring, placement, and retention against Reserves Network and Central Ohio. Reserves Network and Central Ohio both opposed the motion for leave to amend. On August 13, 2010, the trial court denied Thomas' motion for leave to amend his complaint and granted summary judgment in favor of all of the defendants on all counts.

**{¶5}** Thomas now appeals from the trial court's judgment and raises two assignments of error for our review.

II

<u>Assignment of Error Number One</u>

"THE TRIAL COURT ERRED BY PROHIBITING PLAINTIFF-APPELLANT TO AMEND THE COMPLAINT TO CONFORM TO THE EVIDENCE PURSUANT TO CIVIL RULE 15[.]"

---

[1] Thomas initially named McCown as Victor "Doe" in his complaint. After conducting discovery, Thomas sought to amend his complaint in order to properly name Victor McCown. The court granted Thomas leave on April 14, 2010, and Thomas filed an amended complaint naming McCown on April 19, 2010.

{¶6} In his first assignment of error, Thomas argues that the trial court erred by denying his motion for leave to file a second amended complaint. He argues that he should have been permitted to add a claim of negligent hiring, placement, and retention against Reserves Network and Central Ohio. We disagree.

{¶7} "The decision to grant or deny a motion to amend a complaint lies in the discretion of the trial court and will not be reversed absent an abuse of discretion." *Wallner v. Thorne*, 9th Dist. No. 09CA0053-M, 2010-Ohio-2146, at ¶10. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶8} Initially, we note that Thomas sought leave to amend his complaint pursuant to Civ.R. 15(B). Civ.R. 15(B) governs the amendment of a complaint to conform to the evidence at trial and has no application in a case where there has been no trial. *Merrill Lynch Mtge. Lending, Inc. v. 1867 West Market, L.L.C.*, 9th Dist. No. 23443, 2007-Ohio-2198, at ¶11. We next consider whether Civ.R. 15(A) would have supported an amendment to a plaintiff's complaint. Id.

{¶9} Civ.R. 15(A) permits a party to amend a complaint with leave of court after one amendment has already occurred. The rule provides that the leave "shall be freely given when justice so requires." Civ.R. 15(A).

> "[W]here it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175.

Yet, "[a]n attempt to amend a complaint following the filing of a motion for summary judgment raises the spectre of prejudice." *Brown v. FirstEnergy Corp.*, 9th Dist. No. 22123, 2005-Ohio-

712, at ¶6. "A plaintiff must move to amend under Civ.R. 15(A) in a timely manner." *Cunningham v. Cunningham*, 9th Dist. No. 01CA007938, 2002-Ohio-2647, at ¶16.

{¶10} The record reflects that Thomas filed an amended complaint on April 19, 2010 after conducting McCown's deposition at the end of March 2010. After having answered the original complaint, all of the defendants then filed answers to the amended complaint. Moreover, all of the defendants then filed motions for summary judgment on May 7, 2010; May 19, 2010; and May 28, 2010; respectively. The deadline that the trial court set for summary judgment motions was May 28, 2010. Thomas did not seek leave to amend his complaint until July 9, 2010; after the summary judgment deadline had passed and all of the summary judgment motions had been filed.

{¶11} Thomas based his request for leave to amend on evidence that he claimed he did not discover "until the deposition of Victor McCown on March 23, 2010." Thomas further indicated in his motion for leave to amend that his counsel did not obtain a transcript of the depositions in this case until May 12, 2010. His counsel, however, was present for both of the depositions, which took place in March 2010. Thomas even filed his first amended complaint in response to McCown's deposition so as to properly designate McCown as a party-defendant by name. Further, Thomas did not file his motion for leave until almost two months after he claimed that his counsel obtained the transcript of the depositions. The motion for leave to amend was filed well past the deadline that the court had set for summary judgment motions, and both Reserves Network and Ohio Central actually filed summary judgment motions. The amendment would have necessitated a re-filing of those motions, if not an additional discovery period, because both Reserves Network and Ohio Central conducted their discovery and filed their respective motions on the basis of simple negligence, not negligent hiring or retention. See

*Zanni v. Stelzer*, 9th Dist. No. 07CA009108, 2007-Ohio-6215, at ¶8 (setting forth specific elements of negligent hiring and retention).

{¶12} It was within the trial court's discretion to conclude that Thomas' motion for leave to amend was untimely, and that Reserves Network and Ohio Central would be prejudiced by allowing the amendment. See *Brown* at ¶6; *Cunningham* at ¶16-17. Based on our review of the record, we cannot say that the court abused its discretion by refusing to grant Thomas leave to amend. Thomas' first assignment of error lacks merit.

Assignment of Error Number Two

"THE TRIAL COURT ERRED BY GRANTING DEFENDANTS-APPELLEES'
MOTION FOR SUMMARY JUDGMENT WHERE GENUINE ISSUES OF
MATERIAL FACT EXISTED[.]"

{¶13} In his second assignment of error, Thomas argues that the trial court erred by entering summary judgment in favor of Reserves Network and McCown with respect to his claim for negligence against them. We disagree.

{¶14} We first note that Thomas does not challenge the remainder of the trial court's summary judgment determinations. Thomas indicates in his brief that he only challenges the court's summary judgment award with respect to Reserves Network and McCown. As such, we limit our analysis to a review of the award in favor of those two defendants, against whom Thomas only asserted negligence.

{¶15} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for

summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735.

{¶16} The Revised Code immunizes employers from common law suits initiated by their employees for injuries arising out of the course and scope of their employment, provided that the employers are in full compliance with their workers' compensation premiums. R.C. 4123.74. Similarly, fellow employees of an injured employee also are immune from suit, provided that the injury is one "found to be compensable under [the workers' compensation statutes]." R.C. 4123.741. "[R.C. 4123.74] is a codification of the principle set forth in Section 35, Article II of the Ohio Constitution that workers' compensation benefits will be an employee's exclusive remedy against her employer for workplace injuries." *Vacha v. N. Ridgeville*, 9th Dist. No. 10CA009750, 2011-Ohio-2446, at ¶5. The statutes form Ohio's Fellow Servant Immunity Doctrine. *Nova v. State Farm Mut. Auto. Ins. Co.*, 9th Dist. No. 21885, 2004-Ohio-3419, at ¶10, citing R.C. 4123.74 and R.C. 4123.741.

{¶17} The Fellow Servant Immunity Doctrine applies to employers and employees, not independent contractors. *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 49-50. In the context of

temporary agencies who supply their customers with temporary workers, the Ohio Supreme Court has recognized that a customer can be deemed an employer for purposes of fellow servant immunity in certain instances. *Daniels v. MacGregor Co.* (1965), 2 Ohio St.2d 89, syllabus. Immunity is dependent, however, upon the customer acting as the employer rather than the temporary agency. Id. at 93-95. Accord *Cheriki v. Black River Industries, Inc.*, 9th Dist. No. 07CA009230, 2008-Ohio-2602, at ¶17. The key inquiry in determining whether a customer is a worker's employer for purposes of fellow servant immunity is whether the customer has the right to control the manner or means of the temporary worker's performance. *Vandriest v. Midlem* (1983), 6 Ohio St.3d 183, 184; *Daniels*, 2 Ohio St.2d at syllabus.

{¶18} Reserves Network and McCown moved for summary judgment below on the basis of fellow servant immunity. Specifically, they argued that: (1) both McCown and Thomas were employees of Central Ohio, the customer of both Reserves Network and I-Force; (2) because McCown and Thomas were fellow employees and Thomas received workers' compensation after he was injured, McCown was immune from suit under R.C. 4123.741; and (3) the failure of the claim against McCown also resulted in the failure of the claim against Reserves Network, as the negligence claim against it only sounded in vicarious liability by way of the doctrine of respondeat superior. Reserves Network and McCown primarily relied upon the deposition testimony of McCown and Thomas in support of their motion for summary judgment.

{¶19} Thomas testified that I-Force arranged for his employment at Central Ohio. His job there consisted of loading and unloading tires from truck trailers parked at the loading bays in the warehouse. An employee from I-Force took a small group of temporary workers, including Thomas, to Central Ohio after he accepted the job. Once there, however, an employee

of Central Ohio took Thomas around the warehouse and "explained everything" to him. Specifically, Thomas testified that Central Ohio specifically instructed him how to load and unload tires, complete with examples of how the work was to be performed. Thomas was assigned to the area of the warehouse where trucks were ready to be loaded or unloaded and reported to that area at the beginning of the day and after lunch. Central Ohio had scheduled lunch breaks for Thomas and the other warehouse workers as well as fifteen-minute breaks during the course of the day. Thomas testified that he used a punch card to sign in and out at the beginning and end of the day at Central Ohio, as well as at lunch time. He also testified that only half of the warehouse workers could take their lunch at a given time, so Central Ohio divided the warehouse workers into two lunch groups. Thomas explained that Central Ohio trained him to report back to the warehouse after lunch and begin either loading or unloading a truck with a partner, depending on what trucks were there at the time.

{¶20} As to the performance of his job duties, Thomas testified that Central Ohio assigned him to work with a more experienced worker at first so that he could learn exactly how to properly do his job. He explained that there was a specific method for loading and unloading the tires. In unloading a truck, for instance, the tires had to be removed by row from top to bottom with the aid of steel racks and a tow motor, operated by another worker. Thomas indicated that he had a direct supervisor at Central Ohio who remained on the dock alongside the warehouse workers during his shift. On the day Thomas received his injuries, Central Ohio's dock supervisor directed him to load the specific truck at issue because all of the other trucks already had workers on them.

{¶21} McCown testified that he agreed to work at Central Ohio the same day that he contacted Reserves Network, seeking employment. According to McCown, he watched a safety

video at Reserves Network at the time he filled out his application, but did not receive any training there. McCown did not recall ever seeing any Reserves Network employees at Central Ohio. Rather, he testified that Central Ohio's employees trained workers to operate a tow motor if they lacked experience and placed a worker on a tow motor when, in Central Ohio's estimation, the worker was ready to operate it. Central Ohio assigned McCown to a specific tow motor and he operated that particular tow motor each day. Much like Thomas, McCown testified that he used a punch card at Central Ohio and had a scheduled lunch break each day. He further testified that he had a direct supervisor at Central Ohio who would instruct him what to do each day. On the day Thomas was injured, McCown's job consisted of helping to load and unload tires from truck trailers by using the tow motor to transfer the tires on steel racks to and from the warehouse. McCown indicated that Central Ohio generally assigned him someone to work with each day, but sometimes allowed him to choose the person with whom he wished to work.

{¶22} We conclude, based on the foregoing, that McCown satisfied his initial *Dresher* burden with respect to his argument that both Thomas and McCown were employees of Central Ohio at the time Thomas was injured. The record reflects that Central Ohio trained each man to perform their jobs, controlled the manner in which they performed those jobs, and assigned each man to a particular job, area, and/or partner for their job each day. Thomas and McCown also used all of Central Ohio's equipment to perform their duties and reported to a supervisor at Central Ohio. Although both Thomas and McCown emanated from temporary agencies, McCown set forth evidence demonstrating that it was Central Ohio that had the right to control the manner and means of Thomas and McCown's work performances on a daily basis. See *Cheriki* at ¶18; *Daniels*, 2 Ohio St.2d at 90-91. Compare *Marshall*, 15 Ohio St.3d at 49-50 (concluding that reasonable minds could differ on the issue of control where alleged employer

did not distribute equipment, did not discuss when or how work was to be performed, and did not have a presence on a particular job site). Consequently, McCown also satisfied his *Dresher* burden on the issue of his immunity, as his status as a fellow employee of Thomas would immunize him from a negligence suit. See R.C. 4123.741.

{¶23} Thomas first opposed Reserves Network and McCown's motion for summary judgment in this matter on the basis that they failed to assert fellow servant immunity as an affirmative defense. See Civ.R. 8(C) (requiring that "injury by fellow servant" be pleaded as an affirmative defense). In their answer, however, Reserves Network and McCown included as an affirmative defense that Thomas' complaint was barred because workers' compensation benefits "provide[d] [his] sole remedy[.]" It also incorporated by reference and adopted any affirmative defenses raised by other parties to the suit. I-Force, in particular, pleaded the fact that Thomas was barred from bringing suit by virtue of Section 35, Article II of the Ohio Constitution. See *Vacha* at ¶5. Thomas did not respond, either in the court below or in his brief on appeal, to Reserves Network and McCown's argument that the foregoing assertions were sufficient for purposes of having pleaded fellow servant immunity. See App.R. 16(A)(7). Consequently, we reject his blanket assertion that Reserves Network and McCown did not properly raise the defense of fellow servant immunity.

{¶24} Thomas argues on appeal that McCown was not immune from suit because he and McCown came from different temporary agencies. He claims that McCown is a third-party in relation to him and that the Supreme Court's opinion in *Daniels* cannot be extended to situations where the temporary employees at issue come from two different temporary agencies. With regard to McCown, however, Thomas' argument misses the point because so long as both he and McCown were employees of Central Ohio, the relationship between them was not that of third

parties. They would both, as a matter of law, be employees of the same employer. The result only would differ if one or both of them could not be deemed an employee of Central Ohio at the time Thomas was injured.

{¶25} In rebutting the assertion that he was an employee of Central Ohio, Thomas argues in a single, unsupported sentence that I-Force retained a degree of control over his work at Central Ohio. He fails to articulate what, if any, evidence substantiates his assertion. See App.R. 16(A)(7). He also fails to address the impact of his own deposition testimony, in which he indicated that Central Ohio conducted all of his training, work assignments, and daily activity. Id. Absent any analysis to the contrary, we will not conclude that the trial court erred by holding that Thomas was Central Ohio's employee. *Cardone v. Cardone* (May 6, 1998), 9th Dist. No. 18349, at *8 ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out.").

{¶26} In rebutting the assertion that McCown was an employee of Central Ohio, Thomas argues that Reserves Network had a mutual right to control McCown. The only evidence upon which he relies is a "Safety Partnership Letter" that Central Ohio and Reserves Network signed. In the letter, the two companies agreed to have a mutual understanding on the issue of safety and to work toward a safe work environment for all employees. The letter, however, does not refer to McCown at all. Although McCown did testify that he watched a safety training video at Reserves Network when he first applied there, he explained that all his specific job training took place at Central Ohio. Nothing in the record supports the assertion that Reserves Network performed any training at Central Ohio or had any presence there. McCown testified that he did not recall ever seeing a Reserves Network representative at Central Ohio. Indeed, throughout his motion for summary judgment, Thomas specifically accused Reserves

Network of not appearing at Central Ohio to observe or oversee any of the conditions there. As such, we disagree that the letter between Reserves Network and Central Ohio creates any genuine issue of material fact with regard to McCown's employment at Central Ohio. The record supports the trial court's conclusion that McCown was Central Ohio's employee.

{¶27} Because Thomas and McCown were fellow employees, McCown was immune from suit by virtue of fellow servant immunity. R.C. 4123.741. The only remaining issue is the potential liability of Reserves Network. As set forth above, Reserves Network argues that, because McCown is immune from suit, the claim of vicarious liability against Reserves Network through the doctrine of respondeat superior also must fail. See, e.g., *Walk v. Ohio Supreme Court*, 10th Dist. No. 03AP-205, 2003-Ohio-5343, at ¶6 ("[I]f an employee has no liability, the employer cannot be liable under the theory of respondeat superior because any liability of the employer is derivative of the employee's liability."). That is only true, however, when a court determines that an employee's actions are not negligent. See *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217 (concluding that respondeat superior could not apply where employee was not liable on the merits); *Moncol v. Bd. of Ed. Of N. Royalton Sch. Dist.* (1978), 55 Ohio St.2d 72, syllabus ("[B]ased upon the doctrine of respondeat superior, as between the same parties, a judgment in favor of the servant on the merits renders invalid any judgment against the master."); *Pretty v. Mueller* (1997), 132 Ohio App.3d 717, 723 (providing that an employer "cannot be independently found liable under respondeat superior" if the accused employee "has been found to have no liability"). The same rule does not apply to situations where an employee is personally immune from liability. *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, at ¶21-29 ("A private employer may still be liable even if the employee is personally immune, for the doctrine of respondeat superior operates by imputing

to the employer the acts of the tortfeasor, not the tortfeasor's liability."); *Adams v. Peoples* (1985), 18 Ohio St.3d 140, 142-43. Because McCown was immune from suit irrespective of any negligent conduct, Reserves Network was not entitled to summary judgment on the basis of McCown's immunity.

{¶28} The trial court granted summary judgment in favor of Reserves Network on the basis that it was an employer entitled to immunity under R.C. 4123.74. The trial court concluded that *Daniels*, supra, immunized both Central Ohio and Reserves Network from liability because both entities were McCown's employer. This Court disagrees with the trial court's interpretation of *Daniels*. See *Cheriki* at ¶17 ("When a customer of a temporary agency retains the ability to control the manner and means of the work performed by leased employees, it is the customer-*rather than the employment agency*-that enjoys the benefit of the immunity conferred by R.C. 4123.74.") (Emphasis added.); *Foran v. Fisher Foods, Inc.* (1985), 17 Ohio St.3d 193, 194 ("A review of prior case law establishes that one who exercises day-to-day control over the employee will be considered as *the employer* for purposes of workers' compensation.") (Emphasis added.) As previously noted, Central Ohio was acting as McCown's employer, not Reserves Network. The reason that Reserves Network was entitled to summary judgment, therefore, is not because it had employer immunity, but because it was not acting as McCown's employer.

{¶29} The doctrine of respondeat superior subjects an employer or principal to liability for the torts of an employee or agent. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, at ¶20. Yet, the "doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant)[.]" Id. "Generally, an employer or principal is not vicariously liable for the negligence of an independent contractor over whom it retained no right to control the mode and manner of doing the contracted for work." *Lovett v.*

*Lorain Comm. Hosp.*, 9th Dist. No. 2004-Ohio-598, at ¶12, quoting *Clark v. Risko*, 5th Dist. No. 03CA14, 2003-Ohio-7272, at ¶12. Accord *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438. Here, it was Central Ohio, not Reserves Network, who retained control over the mode and manner of McCown's work. Any negligence on his part could not be imputed to Reserves Network by way of respondeat superior because Reserves Network was not exerting control over McCown's actions at the time Thomas was injured. *Lovett* at ¶12. Accordingly, the trial court did not err by entering summary judgment in favor of Reserves Network. *In re Estate of Baker*, 9th Dist. No. 07CA009113, 2007-Ohio-6549, at ¶15 ("An appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial.").

{¶30} In sum, the trial court properly entered summary judgment in favor of McCown and Reserves Network with regard to Thomas' negligence claim against them. Thomas' second assignment of error is overruled.

### III

{¶31} Thomas' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

DICKINSON, J.
<u>CONCURS</u>

BELFANCE, P. J.
<u>CONCURS, IN PART, AND DISSENTS, IN PART, SAYING:</u>

{¶32} I respectfully dissent from the majority's resolution of the first assignment of error and a portion of the second assignment of error.

{¶33} With respect to Mr. Thomas' first assignment of error, the trial court appears to have concluded that Mr. Thomas could not possibly succeed on a negligent hiring claim against Reserves Network based upon its mistaken conclusion that Reserves Network was immune. As the trial court was mistaken on that point, and did not consider the merits of the request for leave to amend under the liberal standard of Civ.R. 15(A), I would remand the matter for the trial court's further consideration.

{¶34} Although the exact nature of the employment relationship between Reserves Network and Mr. McCown is unclear, it is possible that Mr. Thomas could sustain a cause of

action for negligent hiring against Reserves Network even if Mr. McCown is deemed an independent contractor of Reserves Network. While it is generally true that "an employer or principal is not vicariously liable for the negligence of an independent contractor over whom it retained no right to control the mode and manner of doing the contracted for work[,]" (Internal quotations and citations omitted.) see *Lovett v. Lorain Comm. Hosp.*, 9th Dist. No. 03CA008300, 2004-Ohio-598, at ¶12, there are exceptions to the general rule. See *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 257, overruled on other grounds. One of the exceptions is that "an employer may be directly liable for injuries resulting from its own negligence in selecting or retaining an independent contractor." Id. Thus, it is within the realm of possibility that Mr. Thomas could state a claim against Reserves Network for negligent hiring. Because the trial court thought that amendment of the complaint was futile, it did not consider whether Mr. Thomas should be granted leave to amend his complaint to add a claim for negligent hiring against Reserves Network in light of the liberal standard under Civ.R. 15(A). Given the complex nature of the facts, the existence of multiple parties, and the legal issues surrounding this case, in the exercise of its discretion, the trial court could have reasonably allowed Mr. Thomas to amend his complaint. Attorneys do not typically have only one single client and must manage multiple clients, court appearances, and trial schedules. Thus, they should be given reasonable leeway to assess and analyze deposition testimony, research the law, and consult with their clients prior to deciding whether to seek amendment of the complaint. Here, the time-frame between the taking of the depositions and the request for leave to amend was not so unreasonable or egregious that the trial court would have been acting unreasonably if it had granted Mr. Thomas leave. The trial court's journal entry contains no suggestion that it would have denied the leave to amend because of delay. Accordingly, I would decline to decide

this issue in the first instance. I would sustain Mr. Thomas' first assignment of error, and remand the matter to the trial court for consideration of Mr. Thomas' request for leave to amend his complaint.

{¶35} With respect to the majority's resolution of the second assignment of error concerning Mr. Thomas' claim against Reserves Network based upon the doctrine of respondeat superior, I respectfully dissent as I would conclude that Reserves Network did not meet its initial *Dresher* burden on this issue and did not establish its entitlement to judgment as a matter of law.

{¶36} The majority correctly concludes that the workers' compensation statute cannot be employed to define the legal relationship of Mr. Thomas to Reserves Network. Nor can it be employed to absolve Reserves Network of liability as Reserves Network is a third-party with respect to Mr. Thomas. Notably, Reserves Network did not even argue in its motion for summary judgment that it was entitled to summary judgment based upon the application of the doctrine of respondeat superior. Instead, it incorrectly argued that it was immune from suit because Mr. McCown was immune under the worker's compensation statute. The trial court mistakenly agreed that Reserves Network was immune from suit because of Mr. McCown's immunity. Thus, the question of whether Reserves Network was entitled to summary judgment as to Mr. Thomas' claim based upon the doctrine of respondeat superior was not actually considered and decided by the trial court.

{¶37} "To succeed utilizing the doctrine of respondeat superior, [Mr. Thomas] must show (1) that a principal-agent relationship existed between [Mr. McCown] and [Reserves Network], and (2) that [Mr. McCown's] tortious conduct was committed within the scope of h[is] employment." *Thomas v. Speedway Superamerica, LLC*, 9th Dist. No. 06CA0004, 2006-Ohio-5068, at ¶17. Thus, for Reserves Network to succeed on its motion based upon the merits,

it could have asserted either that Mr. McCown was an independent contractor or that his actions were not within the scope of his employment. See id. Furthermore, it had an initial *Dresher* burden to set forth facts that demonstrated a lack of factual dispute as to Mr. McCown's employment status. Yet, Reserves Network made neither argument below.

{¶38} In discussing Mr. Thomas's claim against it sounding in respondeat superior, Reserves Network did not provide or point to any evidence concerning Mr. McCown's employment relationship with Reserves Network. Reserves Network hired Mr. McCown, paid him and provided him with worker's compensation insurance. Beyond that, Reserves Network did not supply pertinent documentation or information concerning its employment relationship with Mr. McCown. We do not know whether Mr. McCown had an employment contract with Reserves Network further detailing the employment relationship. We do not know whether Reserves network retained the ultimate right of control over where and when Mr. McCown worked and whether it had the authority to pull Mr. McCown off of any job he might be working. Nor do we know whether Mr. McCown was a regular W-2 employee or whether he received a 1099 – something that would be more consistent with an independent contractor. Rather, in its motion for summary judgment, it merely stated that "[Mr.] Thomas's claims against [Mr.] McCown are barred by operation of R.C. []4123.741. Thus, there exist no material issues of fact[, and] Thomas's claim against [Reserves Network] must also fail."

{¶39} Thus, in my view, Reserves Network did not meet its *Dresher* burden to demonstrate that Mr. McCown was not its employee. Notably, in assessing this question, the issue is more complicated by virtue of the nature of Reserves Network's business. A unique problem is presented in this employment scenario where Reserves Network is the general or primary employer that services its business clients such as Central by providing them with

temporary employees under circumstances where Reserves may retain the ultimate control over its employee. "Under Ohio law, '[t]he chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work.'" *Burns v. Rudolph*, 9th Dist. No. 22780, 2005-Ohio-6918, at ¶12, quoting *Bobik v. Indus. Comm.* (1946), 146 Ohio St. 187, paragraph one of the syllabus.

> "Factors to be considered in making this determination include: '[(1)] who controls the details and quality of the work; [(2)] who controls the hours worked; [(3)] who selects the materials, tools and personnel used; [(4)] who selects the routes [traveled]; [(5)] the length of employment; [(6)] the type of business; [(7)] the method of payment; and [(8)] any pertinent agreements or contracts.'" *Burns* at ¶12, quoting *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146.

**{¶40}** Thus, in examining Mr. McCown's position vis a vis Reserves Network, based on the record, it would appear that he had little or no control over the type of business he was placed in or the length of employment. Further, we have no information regarding the existence of contracts, if any, between these parties. The fact that Central could direct Mr. McCown as to his work, does not warrant the conclusion that Mr. McCown is an independent contractor of Reserves Network. For this particular aspect of the analysis, the focus is on the relationship between Mr. McCown and Reserves Network. Based upon the record before us, it does not appear that Mr. McCown had much control over "the manner or means of performing the work[]" with respect to Reserves Network, and there is no evidence that Mr. McCown reserved any right of control with respect to his employment with Reserves Network. *Burns* at ¶12, quoting *Bobik*, 146 Ohio St. at paragraph one of the syllabus.

**{¶41}** Given Reserves Network's failure to meet its *Dresher* burden as well as its failure to develop any legal argument in the trial court, I would decline to decide the issue of respondeat superior in the first instance. Accordingly, I respectfully dissent.

APPEARANCES:

JESSE M. SCHMIDT and ROBERT C. OCHS, Attorneys at Law, for Appellant.

STEVEN G. JANIK, AUDREY K. BENTZ, and JOHN J. ROSZCZYK, Attorneys at Law, for Appellee.