[Cite as *Mills v. Enviro-Tank Clean, Inc.*, 2014-Ohio-3866.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | | |
|---|---|---|
| HOBERT J. MILLS | | C.A. No.     13CA0040 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ENVIRO-TANK CLEAN, INC. | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellee | | CASE No.     13-CV-0095 |

DECISION AND JOURNAL ENTRY

Dated: September 8, 2014

---

BELFANCE, Presiding Judge.

{¶1} Plaintiff-Appellant, Hobert Mills, appeals from the judgment of the Wayne County Court of Common Pleas, awarding summary judgment to Defendant-Appellee, Enviro-Tank Clean, Inc. ("Enviro-Tank"). This Court reverses.

I.

{¶2} PGF Limited Partnership, dba Staffing Partners ("Staffing Partners") is a temporary staffing agency that supplies other entities with workers. Mr. Mills was one of Staffing Partners' workers. At some point in 2008, Staffing Partners assigned Mr. Mills to work at Enviro-Tank,[1] a centralized waste treatment facility. While Staffing Partners was responsible for paying and insuring Mr. Mills, Enviro-Tank trained him, set his hours, provided him with a uniform and equipment, and assigned his job duties. Enviro-Tank eventually trained Mr. Mills

---

[1] Mr. Mills was actually assigned to Enviroclean Services, a division of Enviro-Tank. For ease of analysis, we refer to the two entities solely by the name of the parent entity, which is the entity Mr. Mills brought suit against.

to work as a water plant operator; a job that required him to fill a frac tank with wastewater and treat it with sulfuric acid. On December 20, 2010, Mr. Mills was injured when he fell from a ladder he had climbed in order to check the water level inside the frac tank. Mr. Mills received workers' compensation benefits as a result of his injuries.

{¶3} Subsequently, Mr. Mills brought suit against Enviro-Tank, alleging that his injuries were the result of its negligence.[2] The suit also named the Ohio Bureau of Workers' Compensation ("the BWC") as a defendant in the event that it intended to assert its subrogation rights against Enviro-Tank. However, the BWC asked the trial court to designate it as a party plaintiff instead, as it had allowed Mr. Mills' claim and its interests were aligned with his own. The court granted the motion, and the BWC filed its own complaint, seeking to recover the amounts it had expended and would be expending on Mr. Mills' behalf as a result of allowing his workers' compensation claim.

{¶4} Enviro-Tank answered both complaints and later filed a motion for summary judgment. In its motion, Enviro-Tank asserted that it was immune from suit because Mr. Mills was, in actuality, its employee and he had been compensated for his workplace injury through workers' compensation, his exclusive remedy. Mr. Mills filed a brief in opposition, and Enviro-Tank filed a reply brief. The trial court determined that Mr. Mills was acting as Enviro-Tank's employee at the time of his injury and granted Enviro-Tank's motion.

{¶5} Mr. Mills now appeals from the court's judgment and raises one assignment of error for our review.

---

[2] Mr. Mills also sought to hold Enviro-Tank liable under an employer intentional tort theory. He concedes, however, that this appeal only concerns the negligence aspect of his lawsuit. As such, we limit our discussion to his claim for negligence.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT TO ENVIRO ON THE ISSUE OF WHETHER MR. MILLS WAS AN EMPLOYEE OF ENVIRO FOR PURPOSES OF STATUTORY IMMUNITY FOR NEGLIGENCE UNDER OHIO'S WORKERS' COMPENSATION LAWS.

{¶6} In his sole assignment of error, Mr. Mills argues that the trial court erred by granting Enviro-Tank's motion for summary judgment. Specifically, he argues that the court erred when it determined that, at the time of his injury, he was acting as Enviro-Tank's employee. For the reasons outlined below, we agree that the trial court erred by granting Enviro-Tank's motion for summary judgment in this matter.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must

set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 293, quoting Civ.R. 56(E).

{¶8} Ohio's Workers' Compensation statute provides that employers who are in full compliance with their obligation to pay workers' compensation premiums "shall not be liable to respond in damages * * * for any injury * * * received or contracted by any employee in the course of or arising out of his employment * * *." R.C. 4123.74. In seeking summary judgment under R.C. 4123.74, Enviro-Tank had to demonstrate the absence of a dispute of material fact that: (1) Mr. Mills was its employee, (2) his injury arose out of the course and scope of his employment with Enviro-Tank, and (3) Enviro-Tank was in full compliance with its workers' compensation premiums.

{¶9} In this appeal, Mr. Mills' sole challenge to the trial court's award of summary judgment is his assertion that the trial court erred when it determined that he was Enviro-Tank's employee. While we question whether Enviro-Tank produced any evidence that it was in full compliance with its workers' compensation premiums, Mr. Mills has not presented us with that question on appeal. His only argument is that he was not Enviro-Tank's employee. Thus, we limit our review accordingly.

{¶10} R.C. 4123.01 defines an employee as

> every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single household and casual workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single employer, or (ii) is bound by any such contract of hire or by any other written contract, to pay into the state insurance fund the premiums provided by this chapter.

R.C. 4123.01(A)(1)(b).

> Where an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act * * *.

*Daniels v. MacGregor Co.*, 2 Ohio St.2d 89 (1965), syllabus. Thus, in determining whether a temporary worker is actually an employee of his or her temporary agency's customer, the key inquiry is who had the right to control the employee. *Daniels* at 93-94. *Accord Campbell v. Cent. Terminal Warehouse*, 56 Ohio St.2d 173, 175 (1978).

> The determination of who has the right to control must be made by examining the individual facts of each case. The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

*Bostic v. Connor*, 37 Ohio St.3d 144, 146 (1988).

{¶11} In his deposition, Mr. Mills testified that he worked at Enviro-Tank for about two and a half years and was interviewed by an Enviro-Tank supervisor before he started working there. Mr. Mills began as a janitor, but other Enviro-Tank employees later trained him to perform maintenance and, eventually, to act as a water plant operator. Mr. Mills agreed that he wore an Enviro-Tank uniform while working and that Enviro-Tank provided him with any equipment, including safety equipment, he might need. He also agreed that his Enviro-Tank supervisor set his work schedule, assigned his work duties, handled his requests for time off, and had the authority to discipline him. Further, he agreed that he reported daily to his Enviro-Tank supervisor and worked under the direction and control of Enviro-Tank management, rather than anyone from Staffing Partners. Mr. Mills testified that, before the day of his accident, he had climbed the frac tank ladder every day for two and a half years without incident. He testified

that he learned the process of filling the frac tank and climbing its ladder to check its fullness from the other Enviro-Tank employees who had trained him.

{¶12} In his deposition, Rishi Bhanot testified that he was the operations manager at Enviro-Tank and Mr. Mills' supervisor. He was not sure what percentage of the staff at the centralized waste treatment facility were workers from temporary agencies, but stated that he "would say * * * half just to throw it out there." Mr. Bhanot testified that Mr. Mills received his paychecks from Staffing Partners, "but to me he was our employee." He specified that Enviro-Tank "instructed Mr. Mills when to come to work, what time, what hours he would be doing, what he would be doing, how to do things. He wore a uniform. We treated him just like everyone else. He received vacation, sick time."

{¶13} Mr. Bhanot acknowledged that he had signed a Safety Partnership Agreement with Staffing Partners on January 5, 2010, approximately 11 months prior to Mr. Mills' injury. Pursuant to the agreement, workers from Staffing Partners were "not permitted to climb structures of any kind, including * * * ladders * * *, higher than six (6) feet above the floor, without the written permission of Staffing Partners." Mr. Bhanot did not dispute that the ladder from which Mr. Mills fell was approximately 10 to 12 feet high. According to Mr. Bhanot, however, Staffing Partners had given Enviro-Tank permission to have workers climb its ladders. He could not recall whether the permission was in writing.

{¶14} The Temporary Staffing Service Agreement between Enviro-Tank and Staffing Partners provides that Staffing Partners

> agrees to assume full responsibility for paying the Employees, withholding and transmitting payroll taxes, making unemployment contributions, and responding to claims for unemployment and workers' compensation proceedings involving Employees. Employees will not be treated as employees of [Enviro-Tank] for STAFFING PARTNERS purposes of holidays, vacations, disability, insurance, pensions or other employee benefits offered or provided by [Enviro-Tank].

The contract further provides that Staffing Partners will invoice Enviro-Tank on a weekly basis for the services of its workers. Pursuant to the contract, Enviro-Tank "acknowledge[d] that all personnel sent by STAFFING PARTNERS [were] employees of STAFFING PARTNERS." It also agreed not to "permit or cause [employees] to perform any work activities other than those specifically set forth in STAFFING PARTNERS' Order Form."

{¶15} Mr. Mills argues that the trial court erred by granting Enviro-Tank's motion for summary judgment because, at the time he was injured, he was "contractually * * * outside of the employer-employee relationship." Mr. Mills argues that Enviro-Tank did not have the right to control him when he climbed the frac tank ladder because Enviro-Tank had agreed, by way of the Safety Partnership Agreement, that it would not have workers climb any ladders over the height of six feet without the written permission of Staffing Partners. Enviro-Tank counters that the testimony of Mr. Bhanot established that Enviro-Tank had obtained Staffing Partners' permission. It further counters that, even if Staffing Partners did not give its permission, the single clause in the safety agreement was not sufficient evidence to rebut the "overwhelming evidence that [Enviro-Tank] had the right to control the manner and means of [Mr. Mills'] work."

{¶16} Enviro-Tank presented evidence that it trained Mr. Mills, provided him with equipment and a uniform, set his hours, assigned his job duties, and supervised him on a day-to-day basis. Mr. Mills conceded that he reported daily to his Enviro-Tank supervisor and worked under the direction and control of Enviro-Tank management, rather than anyone from Staffing Partners. Thus, Enviro-Tank set forth evidence that it had the right to control Mr. Mills such that he was its employee at the time of his injury. *See Bostic*, 37 Ohio St.3d at 146; *Daniels*, 2 Ohio St.2d at 94-95. *See also Thomas v. Reserves Network*, 9th Dist. Lorain No. 10CA009886, 2011-

Ohio-5857, ¶ 22. The burden then shifted to Mr. Mills to point to evidence showing a genuine issue of material fact for trial. *See Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E).

**{¶17}** In opposition to summary judgment, Mr. Mills pointed to the safety agreement that Mr. Bhanot signed on behalf of Enviro-Tank in January 2010. The plain language of the safety agreement provided that workers such as Mr. Mills would "not [be] permitted to climb structures of any kind, including * * * ladders, * * * higher than six (6) feet above the floor, without the written permission of Staffing Partners." Although Mr. Bhanot testified that Enviro-Tank had received Staffing Partners' permission, he could not recall whether the permission had been in writing. More importantly, it was never Enviro-Tank's position that Staffing Partners' permission was unnecessary. Enviro-Tank's position was that Staffing Partners had given its permission. Had Enviro-Tank possessed the absolute right to control the manner and means of Mr. Mills' work, it would not have been necessary for it to secure Staffing Partners' permission before ordering him to climb the frac tank ladder.

**{¶18}** Pertinent agreements and contracts are one factor that a court must consider in performing a right to control analysis. *Bostic* at 146. Although Enviro-Tank set forth a significant amount of evidence tending to show that it had the right to control Mr. Mills' work on a day-to-day basis, the safety agreement between Enviro-Tank and Staffing Partners constituted evidence to the contrary. It appears to be the position of Enviro-Tank that Mr. Mills failed to show that Staffing Partners *actually exercised* any control over him. The relevant inquiry, however, is who had the *right to exercise* control over Mr. Mills. *See id.* ("The key factual determination is who had the right to control the manner or means of doing the work."). *See also Walker v. Lahoski*, 9th Dist. Summit No. 19293, 1999 WL 548978, *5-6 (July 28, 1999); *Indus. Comm. of Ohio v. Laird*, 126 Ohio St. 617, 619 (1933) ("The ultimate question is not whether the

employer actually exercises such control, but whether he has the right to control."). Because this appeal stems from an award of summary judgment, we must view the facts in a light most favorable to Mr. Mills and resolve any doubt in his favor. *See Garner*, 2011-Ohio-1519, at ¶ 8.

{¶19} It is undisputed that Mr. Mills fell from a ladder in excess of six feet when he was injured. Pursuant to the safety agreement that Mr. Bhanot signed on behalf of Enviro-Tank, Enviro-Tank had to secure the written permission of Staffing Partners before it could order one of its temporary workers to climb such a ladder. *Compare Thomas*, 2011-Ohio-5857, at ¶ 26 (safety agreement did not create genuine issue of material fact where it amounted to general promise between the companies "to work toward a safe environment for all employees"). The safety agreement constituted a pertinent agreement that tended to show that Staffing Partners specifically retained the right to control the means and manner of Mr. Mills' work as detailed in the agreement. *See Bostic*, 37 Ohio St.3d at 146. We also would note that the Temporary Staffing Service Agreement between Staffing Partners and Enviro-Tank (1) classified all workers sent by Staffing Partners as employees of Staffing Partners, and (2) prohibited Enviro-Tank from causing workers to "perform any work activities other than those specifically set forth in STAFFING PARTNERS' Order Form." In light of the record before us, we conclude that summary judgment was improper here. Mr. Mills satisfied his reciprocal *Dresher* burden by pointing to evidence that created at least a genuine issue of material fact for trial. *See Dresher*, 75 Ohio St.3d at 293, quoting Civ.R. 56(E). Thus, Enviro-Tank was not entitled to summary judgment on the issue of workers' compensation immunity. Mr. Mills' sole assignment of error is sustained.

III.

**{¶20}** Mr. Mills' sole assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J
CONCUR.

APPEARANCES:

CHARLES A. KENNEDY, Attorney at Law, for Appellant.

KENNETH A. CALDERONE and JOHN R. CHLYSTA, Attorneys at Law, for Appellee.